# Medtronic

**Date: 2/7/2017**

**Agreement Number:**

**CUSTOMER NAME:  Medical University Hospital Authority**

**Customer Account Numbers:**

**Customer Address:**
**169 ASHLEY AVE RM 125A, CHARLESTON, SC 29425**
**Sales Manager:  Barrett Garner**

**Sales Manager:  Barrett Garner**

## MASTER CAPITAL PURCHASE PROGRAM AGREEMENT

Dear Customer:

This Master Purchase Agreement (this "**Agreement**") made by and between **Medical University Hospital Authority ("Customer**") at **169 ASHLEY AVE RM 125A, CHARLESTON, SC 29425**, and **Covidien Sales LLC**, a Medtronic company ("**Seller**") having an address at 555 Long Wharf Drive, New Haven, CT 06512, is effective upon mutual execution by the parties as of the date this Agreement is counter-signed by Seller ("Effective Date") for thirty-six **(36)** months (the "**Program Term**").  This offer to sell Capital listed on the Purchase Schedule **Exhibit A-1** is firm and valid until March 31, 2017  (60 days from initial proposal date).  Capitalized terms may be further defined below.

1. **PURPOSE:**  During the Program Term, Customer hereby agrees to purchase from Seller the capital ("Capital"), if any, identified on each purchase schedule ("**Purchase Schedule**") in a form substantially similar to **Exhibit A-1** which is attached hereto and incorporated herein by reference.  Any such Purchase Schedule which is executed by Customer and Seller shall be referenced herein as a "Purchase Schedule" and is hereby incorporated into and becomes a material term of this Agreement.  Seller offers Customer the opportunity to earn a discount on the Capital identified on the applicable Purchase Schedule through the purchase of consumable products related to the use of the Capital ("**Related Disposables**") and purchased directly from Seller for use with the Capital. The purchase of the Capital and the offer of the discount on the purchase of the Capital are subject to the terms and conditions set forth herein. Capital and Related Disposables may be referred to herein collectively as **Products**.

2. **PRICING AND PAYMENT TERMS FOR CAPITAL PURCHASE**:  During the term of this Agreement ("**Program Term**"), Seller agrees to sell and Customer agrees to purchase Capital under the terms and conditions set forth in this Agreement.  Capital provided for Customer's use hereunder may be new or refurbished.  Except as otherwise provided for herein, all terms and conditions governing the direct purchase of Capital in an applicable group purchasing organization agreement (to which Seller is a party), or locally negotiated agreement thereunder, shall apply.  In the event no such agreements apply, then Seller's standard terms and conditions of sale shall apply.  Customer will be invoiced for Capital purchased hereunder at the pricing set forth in the applicable Payment Schedule ("**Exhibit A-2**").  Seller will invoice Customer annually according to the Payment Schedule term. Customer shall pay Seller the Purchase Price for the Capital in the amount set forth on the applicable Purchase Schedule. The Purchase Price excludes applicable tax and freight.  Subject to Section 9 (Termination), payment is due in arrears within thirty (30) days after the expiration of a contract year, or date of invoice, whichever is later, for the applicable Payment Schedule.

3. **PURCHASE ORDER/PURCHASE AUTHORIZATION:** For shipping purposes, upon placement of the order, Customer will issue, at minimum, a $0 Purchase Order(s) ("PO"). Customer will issue subsequent POs thereafter each contract year, as necessary within thirty days from issuance of the annual reconciliation statement referenced in paragraph 6, to facilitate the invoicing for the Capital purchase price consistent with the applicable Payment Schedule terms. The Payment Schedule is Customer's purchase authorization of the Capital and Customer is responsible for all amounts due under the applicable Purchase and Payment Schedules.

4. **PURCHASE SCHEDULE CHANGE ORDERS:**  From time to time during a Payment Schedule term, the parties may amend a Purchase Schedule by executing a mutually signed amendment to accommodate purchase of additional or replacement Capital or individual components related to such Purchase Schedule and adjusting the discount chart included in the applicable Payment Schedule in accordance with such changes.  No such changes may be for a Purchase Price of the additional Capital or components of less than $5,000.  Change orders are limited to two per contract year and cannot be within 1 year of contract expiration.

5. **PRICING ON RELATED DISPOSABLES:**  Customer will be invoiced at the applicable group purchasing organization ("**GPO**") price for the Related Disposables in effect at the time the order is placed, or, in cases where GPO price is inapplicable, Customer's locally negotiated price.  All terms and conditions applicable to the direct purchase of the Related Disposables at the GPO or locally negotiated price shall apply.  In the event no such agreements apply, then Seller's standard terms and conditions of sale shall apply. The price of the Related Disposables, net of any additional discounts, will be determined annually.

6. **CAPITAL DISCOUNT:**  Customer may earn a discount on the Capital based on the total value of the Related Disposables purchased in each contract year directly from Seller (unless otherwise noted on the applicable Payment Schedule). Customer will earn a pro-rata amount of the full discount based on the achievement level of Related Disposable purchases to the target level during the payment period, in accordance with the table set forth in Exhibit A-2. Following each contract year, Seller shall provide a reconciliation statement to Customer documenting the discount earned (if any) and its application to the purchase price of the Capital for each Payment Schedule. The value of any discount earned from the purchase of Related Disposables will be applied as an offset to the Capital Purchase Price due, unless Customer otherwise directs Seller in writing as to an alternative application of the discount. Discounts may also be recognized in the form of an offset against Customer receivable. If the value of any discount does not satisfy the amount due for the corresponding payment period, Customer will remit the difference to Seller per the Purchase Schedule.

   For the avoidance of any doubt, Customer will receive the discount based on its purchases of Related Disposables during such twelve month period and Customer cannot reach a higher discount threshold by submitting direct cash payments to Seller. Direct cash payments may only be applied to the Capital Purchase Price after the discount has been applied. Purchases of Related Disposables count towards the Minimum Annual Related Disposable Purchase Requirement for the twelve month period in which they were purchased and may not count toward a subsequent twelve month payment period. The Maximum Annual Discount earned through Related Disposable purchases shall not exceed the Capital Purchase Price. Customer acknowledges that a full description of the potential discount is set forth in this Agreement and will not be reported in each invoice.

7. **COMPLIANCE**: Customer acknowledges and agrees that all transactions with Seller in connection with this Agreement are made in good faith on the basis of arms-length negotiation. Customer agrees to comply with all applicable laws in connection with this Agreement, including all standards applicable to disclosure and reporting the existence and terms of this Agreement to Medicare, Medicaid or other federal or state health care programs in accordance with 42 U.S.C. §1320b-7b and 42 C.F.R. §1001.952(h)(1). Capital are approved by the United States Food and Drug Administration ("FDA") only for certain indications, and Seller's listing and pricing of Capital and provision of Capital set out in this Agreement will not be construed to constitute a promotion or approval by Seller of uses that are other than, or contrary to, those indications (commonly called "off-label" uses). Seller's Capital should only be used for FDA-approved indications. Seller will not be responsible for damages or losses of any kind arising out of off-label uses. Seller's warranties, representations, and obligations under this Agreement are void as to any such off-label uses. This provision shall survive the termination of this Agreement.

8. **EXPIRATION/EXTENSION/TERMINATION**: Either party may terminate this Agreement by giving thirty (30) days written notice to the other party. If this Agreement expires by its own terms, or is earlier terminated as provided herein, Customer shall have thirty (30) days from the expiration date or termination to remit to Seller the Purchase Price based on the applicable Purchase Schedule less any discount earned prior to the official termination date.

9. **CONFIDENTIALITY**: Customer agrees that all pricing and other terms set forth in this Agreement are confidential and shall not be disclosed, disseminated, used or otherwise made available to any third party for any purpose including use as a basis for competitive solicitation. This provision shall survive for three (3) years following the termination of this Agreement.

10. **ADDITIONAL TERMS**: The terms and conditions attached as <u>Exhibit B</u> and Seller's standard terms and conditions of sale are incorporated herein by reference.

If the foregoing meets with your approval, please sign and return the enclosed copy, attaching your signed purchase order referencing this Agreement, to the Contract Administration Department via email at <u>Contracts@Covidien.com</u>.

**Purchase and Payment Schedules Agreed to by:**

**Medical University Hospital Authority**

By: _____
      (Signature)

Printed: _____

Title: _____

Date:_____

**Covidien Sales LLC**

By: _____
      (Signature)

Printed: _____

Title: _____

Date: _____

(Please provide PURCHASE ORDER number for further processing.)

PURCHASE ORDER # _____

**EXHIBIT A-1**

**PURCHASE SCHEDULE**
**TO MASTER CAPITAL PURCHASE PROGRAM AGREEMENT ("Agreement")**

**Purchased Capital**

| EQUIPMENT | CUSTOMER NUMBER | CUSTOMER NAME | QTY |
|---|---|---|---|
| VLFT10GEN | 543538 | Medical University of South Carolina – Main OR | 25 |
| VLFTCRT | 543538 | Medical University of South Carolina – Main OR | 25 |
| E6008 | 543538 | Medical University of South Carolina – Main OR | 25 |
| E6019 | 543538 | Medical University of South Carolina – Main OR | 25 |

| EQUIPMENT | CUSTOMER NUMBER | CUSTOMER NAME | QTY |
|---|---|---|---|
| VLFT10GEN | 543567, 3347583 | Medical University of South Carolina – ART OR | 4 |
| VLFTCRT | 543567, 3347583 | Medical University of South Carolina – ART OR | 4 |
| E6008 | 543567, 3347583 | Medical University of South Carolina – ART OR | 4 |
| E6019 | 543567, 3347583 | Medical University of South Carolina – ART OR | 4 |

| EQUIPMENT | CUSTOMER NUMBER | CUSTOMER NAME | QTY |
|---|---|---|---|
| VLFT10GEN | 543535 | Medical University of South Carolina – Amb. OR | 9 |
| VLFTCRT | 543535 | Medical University of South Carolina – Amb. OR | 9 |
| E6008 | 543535 | Medical University of South Carolina – Amb. OR | 9 |
| E6019 | 543535 | Medical University of South Carolina – Amb. OR | 9 |

*TOTAL*    $643,480

**Trade-In Equipment**

| EQUIPMENT | HOSPITAL | ACCOUNT NUMBER | SERIAL NUMBER |
|---|---|---|---|
| ForceTriad | Medical University of South Carolina | 543538 | T7F3229E |
| ForceTriad | Medical University of South Carolina | 543538 | T0D16300E |
| ForceTriad | Medical University of South Carolina | 543538 | T2E29341EX |
| ForceTriad | Medical University of South Carolina | 543567, 3347583 | T1J25729 |
| ForceTriad | Medical University of South Carolina | 543567, 3347583 | T1J25731EX |
| ForceTriad | Medical University of South Carolina | 543567, 3347583 | T1J25729EX |
| ForceTriad | Medical University of South Carolina | 543535 | T1A20430E |
| ForceTriad | Medical University of South Carolina | 543535 | T1J25733EX |

| EQUIPMENT | HOSPITAL | ACCOUNT NUMBER | QTY |
|---|---|---|---|
| Thunderbeat Generator | Medical University of South Carolina | 543538 | 1 |

**The total Trade-In Credit shall not exceed $40,000 (for all equipment traded in under this Agreement/ for each category of equipment to be traded in under this Agreement).**

| | |
|---|---|
| *TRADE-IN CREDIT AMOUNT\** | -$40,000 |

| | |
|---|---|
| *NET CAPITAL PURCHASE PRICE* <br> *(AMOUNT TO BE LISTED IN PAYMENT SCHEDULE)* | $603,480 |

*By trading in any equipment under this Agreement, Customer represents and warrants that (i) it has full right, title and authority to the equipment; (ii) it can trade in such equipment under this Agreement; and (iii) no third party has any right, title or interest in such equipment. If any TRADE-IN CREDIT amount is entered, the initial Purchase Order value cannot be $0. It must be equal to the down payment amount entered above and subsequent purchase orders will be in accordance with Paragraph 3 of the Agreement.*

### Related Disposables (Vessel Sealing)

| ITEM CODE | DESCRIPTION | Quantity | UOM |
|---|---|---|---|
| LF1212A | LIGASURE CUR SM JAW SEALER/DIV CA | 6 | CASE |
| LF1623 | LIGASURE 5MM BLUNT TIP LAP SEALERDIVIDER (23CM) | 6 | CASE |
| LF1637 | LIGASURE 5MM BLUNT TIP LAP SEALERDIVIDER (37CM) | 6 | CASE |
| LF1644 | LIGASURE 5MM BLUNT TIP LAP SEALERDIVIDER (44CM) | 6 | CASE |
| LF1723 | LIGASURE MARYLAND JAW LAP DEVICE (23CM) | 6 | CASE |
| LF1737 | LIGASURE MARYLAND JAW LAP DEVICE (37CM) | 6 | CASE |
| LF1744 | LIGASURE MARYLAND JAW LAP DEVICE (44CM) | 6 | CASE |
| LF4318 | LIGASURE IMPACT INSTRUMENT | 6 | CASE |
| LF4418 | LIGASURE CURVED LARGE JAW OPEN SEALER | 6 | CASE |
| LF5544 | LIGASURE ADVANCE, PISTOL GRIP | 6 | CASE |
| LS1020 | LIGASURE HANDSWITCHING ATLAS 20 CM | 6 | CASE |
| LS1037 | LIGASURE HANDSWITCHING ATLAS 37 CM | 6 | CASE |

### Related Disposables (Electrosurgery)

| ITEM CODE | DESCRIPTION | QNTY | UOM |
|---|---|---|---|
| E00091R | PATIENT RETURN CORD - VLAB REM | 1 | BOX |
| E0019 | BIPOLAR FORCEPS CORD | 1 | BOX |
| E0503 | LECTROCORD | 50 | CASE |
| E0509 | CORD STERILE DISP BIPOLAR 50EA | 50 | CASE |
| E0510 | STERILE DISP LAP CORD | 50 | CASE |
| E0512 | DISP BIPOLAR FORCEPS CORD | 50 | CASE |
| E0520 | DISP SWITCH/CORD 3M (10FT) | 10 | CASE |
| E0560 | CLAMP/CORD ASSEMBLY | 1 | BOX |
| E1000 | ELECTRODE, 1/8" BALL | 1 | BOX |

| E1002 | ELECTRODE, 7/32" BALL | 1 | BOX |
|---|---|---|---|
| E1003 | ELECTRODE, 1" FINE NEEDLE | 1 | BOX |
| E1004 | ELECTRODE, 3/32" ANGLED BALL | 1 | BOX |
| E1005 | ELECTRODE, 3/8" LOOP | 1 | BOX |
| E1020 | ELECTRODE 1"BLADE | 1 | BOX |
| E14504 | 4" EDGE BLADE UN-INS | 50 | CASE |
| E14506 | EXTENDED COATED BLADE | 50 | CASE |
| E1450G | 2.75 GEN COATED BLADE | 50 | CASE |
| E1450X | 2.75 HEX COATED BLADE | 50 | CASE |
| E1452 | COATED NEEDLE ELECTRODE | 50 | CASE |
| E14526 | EXT COATED NEEDLE ELECTRO | 50 | CASE |
| E1455 | EDGE INSUL. COATED BLADE | 50 | CASE |
| E1455360 | COATED INSUL BLADE ELEC | 50 | CASE |
| E14554 | 4" EDGE BLADE INSULATED | 50 | CASE |
| E14556 | EDGE INSUL. COATED BLADE | 50 | CASE |
| E1455B | EDGE INSLTD BLADE W/SLV 2.75 | 25 | CASE |
| E1455B4 | EDGE INSLTD BLADE W/SLEEVE 4" | 25 | CASE |
| E1465 | EDGE INSUL COATED NEEDLE | 50 | CASE |
| E14654 | 4" EDGE NEEDLE INSULATED | 50 | CASE |
| E14656 | EDGE EXT INS COATED NDL | 50 | CASE |
| E1465B | EDGE INSLT NEEDLE W/SLV 2.84 | 25 | CASE |
| E1465B4 | CASED 4" EDGE NEEDLE INSULATED | 25 | CASE |
| E1475X | 2.75 EDGE COATED BLADE | 50 | CASE |
| E1502 | ELECTRODE EXTENSION | 1 | BOX |
| E1504 | ELECTRODE EXTENSION - 11" | 1 | BOX |
| E1510 | ARTHROSCOPIC HOOK ELECTRODE | 10 | CASE |
| E1511 | AR HOOK ELECTRODE 45 DEG ANGLE | 10 | CASE |
| E1512 | AR ANGLED BLADE ELECTRODE INS | 10 | CASE |
| E1513 | AR ANGLED BLADE ELECTRODE | 10 | CASE |
| E1550 | BALL ELECTRODE | 150 | CASE |
| E15516 | LECTRODE, EXTENDED | 50 | CASE |
| E1551G | BLADE ELECTRODE | 150 | CASE |
| E1551X | BLADE ELECTRODE HEX CHUCK | 150 | CASE |
| E1552 | NEEDLE ELECTRODE | 150 | CASE |
| E15526 | EXTENDED NEEDLE ELECTRODE 6" | 50 | CASE |
| E1559 | 10X10MM DSP TNG LLETZ LOOP | 10 | CASE |
| E1560 | 15X12MM DSP TNG LLETZ LOOP | 10 | CASE |
| E1561 | 20X12MM DISP TNG LLETZ LOOP | 10 | CASE |
| E1562 | 20X15MM DSP TNG LLETZ LOOP | 10 | CASE |
| E1563 | 3MM DISP LLETZ BALL | 10 | CASE |
| E1564 | 5MM DISP LLETZ BALL | 10 | CASE |
| E1565 | 5X5MM DSP TNG LLETZ SQRE | 10 | CASE |
| E1567 | 10X8MM DSP TNG LLETZ SQRE | 10 | CASE |
| E1650 | POINT TUNGSTEN NEEDLE 2CM | 10 | CASE |
| E1651 | POINT TUNGSTEN NEEDLE 3CM | 10 | CASE |
| E1652 | POINT TUNGSTEN NEEDLE 3CM WITH 3MM ANGLE | 10 | CASE |
| E1653 | POINT TUNGSTEN NEEDLE 3CM WITH 1MM ANGLE | 10 | CASE |
| E1654B | POINT TUNGSTEN NEEDLE 3.5 " STRAIGHT | 10 | CASE |

| E2100 | REUSABLE PENCILW/15FT CORD 50U | 10 | CASE |
|---|---|---|---|
| E2250H | FOOTSWITCH PENCIL | 50 | CASE |
| E2350H | ROCKERSWITCH PENCIL | 50 | CASE |
| E2350HDB | EDGE RKR PNCL W/ 15' CORD | 50 | CASE |
| E2350HS | EDGE SMOKE ROCKER PENCIL | 25 | CASE |
| E2400 | E.S. ACCESSORY HOLSTER | 50 | CASE |
| E2401 | DISPOSABLE LECTROBRASIVE | 100 | CASE |
| E2450H | BUTTONSWITCH PENCIL | 50 | CASE |
| E2450HS | BUTTON PENCIL W/SMOKE EVAC,CB | 25 | CASE |
| E2504 | LECTROCHUCK | 50 | CASE |
| E2504H | FOOTSWITCHING PENCIL W/HOLSTER | 50 | CASE |
| E250510FR | LECTROVAC 6-INCH | 25 | CASE |
| E250610FR | LECTROVAC 16-INCH | 10 | CASE |
| E2510H | ARTHRO KIT HOOK INSULATED | 10 | CASE |
| E2511H | ARTHRO KIT 45 DEG INSULATED | 10 | CASE |
| E2512H | ARTHRO KIT ANGLD BLD INSULATED | 10 | CASE |
| E2515 | DISPOSABLE HANDSW PENCIL | 50 | CASE |
| E2515H | DISP HNDSW PENCIL W/ HOLSTER | 50 | CASE |
| E2515HDA | DISP HNDSW PNCL W/HLSTR & NDL | 50 | CASE |
| E2515HDB | DHP W/RCKR, 15' CORD & HLSTR | 50 | CASE |
| E2515HS | PENCIL W/SMOKE EVACUATION | 25 | CASE |
| E2516 | HANDSWITCH PENCIL | 50 | CASE |
| E2516H | HANDSWITCH PENCIL W/ HOLSTER | 50 | CASE |
| E2516HDA | DISP HNDSW PNC W/HLSTR & NDL | 50 | CASE |
| E2516HS | PENCIL W/SMOKE EVACUATION | 25 | CASE |
| E2517H | POWER CONTROL PENCIL | 10 | CASE |
| E2520H | ARGON PLUS HANDSET 10/CASE | 10 | CASE |
| E253028 | GSU 2 EXTENDER 28CM | 10 | CASE |
| E25303 | DISP EXTENDER 3" GSU | 10 | CASE |
| E25306 | DISP EXTENDER 6" GSU | 10 | CASE |
| E2532 | GSU 1" NEEDLE, 50/CASE | 50 | CASE |
| E258028 | GSU RETRACTABLE BLADE 28-CM | 10 | CASE |
| E258128 | GSU RETRACTABLE L-HOOK 28-CM | 10 | CASE |
| E258228 | GSU RETRACTABLE S. NEEDLE 28CM | 10 | CASE |
| E258328 | GSU RETRACTABLE B NEEDLE 28CM | 10 | CASE |
| E26086 | LECTROVAC II 6-INCH | 25 | CASE |
| E261016 | ASSY HNDSW LECTROVAC | 10 | CASE |
| E26106 | LECTROVAC II 6-INCH | 25 | CASE |
| E26126 | LECTROVAC II 6-INCH | 25 | CASE |
| E2750 | LCD HANDSWITCH STERIL CS/10 | 10 | CASE |
| E277028 | STRAIGHT SPATULA | 10 | CASE |
| E277128 | CURVED SPATULA | 10 | CASE |
| E277228 | WIRE "J" | 10 | CASE |
| E277328 | WIRE "L" | 10 | CASE |
| E277428 | FLAT L | 10 | CASE |
| E278028 | LHE STRAIGHT SPATULA TIP | 10 | CASE |
| E278128 | LHE CURVED SPATULA TIP | 10 | CASE |
| E2781R28ASP | RET CUR SPAT W/ASP HOLES | 10 | CASE |

| E278228 | LHE WIRE "J" HOOK TIP | 10 | CASE |
|---|---|---|---|
| E2782R28ASP | RET WIRE J W/ASP HOLES | 10 | CASE |
| E278328 | LHE WIRE "L" HOOK TIP | 10 | CASE |
| E2783R28ASP | RET WIRE L W/ASP HOLES | 10 | CASE |
| E2783R36ASP | RET WIRE L W/ASP HOLES | 10 | CASE |
| E278428 | ELECTRODE, FLAT L | 10 | CASE |
| E2784R28ASP | RET FLAT L W/ASP HOLES | 10 | CASE |
| E278628 | LHE CYLINDRICAL TIP | 10 | CASE |
| E2999 | CORD MONOPOLAR DAVINCI | 1 | BOX |
| E3590 | SMOKE ATTACH WITH FLEXIBLE TUBING | 25 | CASE |
| E3595 | ACCUVAC EXTENSION | 10 | CASE |
| E3600 | RAPID VAC ES SENSOR | 1 | BOX |
| E3605 | INTERLINK CABLE | 1 | BOX |
| E3615 | OPTIMUMM FOOTSWITCH | 1 | BOX |
| E3625 | OPTIMUMM ULPA FILTER | 3 | CASE |
| E3630 | SMOKE EVACUATOR PREFILTER | 25 | CASE |
| E3635 | TUBING 7/8" X 10' STERILE | 12 | CASE |
| E3645 | TUBING, 3/8" X 10', STERILE | 10 | CASE |
| E3650 | WAND 7/8" DIA STER | 5 | CASE |
| E3655 | REDUCER FITTING 7/8" TO 3/8" | 25 | CASE |
| E3660 | PREFILTER ADAPT 1 1/3" TO 3/8" | 25 | CASE |
| E3665 | PREFILTER ADAPT 1 1/3" TO 7/8" | 25 | CASE |
| E3680 | TUBING FLUID CANISTER KIT | 3 | CASE |
| E4051CT | FORCEP INSUL SCOVILL/GREENWALD | 1 | BOX |
| E4052CT | FORCEP INSUL BAYONET CUSH 6" | 1 | BOX |
| E4053CT | FORCEP CUSHING 7" INSUL | 1 | BOX |
| E4054CT | FORCEP INSUL BAYONET CUSH 7" | 1 | BOX |
| E4055CT | FORCEP JEWELERS STR/TIP 4" | 1 | BOX |
| E4057CT | FORCEP INSUL GRLD MICROBIP 7.5 | 1 | BOX |
| E4058CT | FORCEP CUSHING BAYONET 7.5" IN | 1 | BOX |
| E4059CT | FRCP HARDY/MICRBPLR W/STP | 1 | BOX |
| E4060CT | FORCEP SEMKIN MICROBIP W/STP | 1 | BOX |
| E4062CT | FRCP IRIS CURVED 3.5" INS | 1 | BOX |
| E4073CT | FRCP TITANIUM INSULATED | 1 | BOX |
| E7506 | POLYHESIVE RETURN ELECTRODE | 50 | CASE |
| E7507 | POLYHESIVE II RETURN ELECTRODE | 50 | CASE |
| E7507DB | POLYHESIVE II RETURN ELECTRODE - 15' | 50 | CASE |
| E7508 | ADULT RETURN ELEC W/O CORD | 100 | CASE |
| E7509 | POLYHESIVE II CORDLESS | 50 | CASE |
| E7509B | POLYHESIVE CORDLESS BULK | 600 | CASE |
| E751025 | PED RETURN ELEC | 25 | CASE |
| E751025DB | PED RETURN ELEC | 25 | CASE |
| E7512 | NEONATAL RETURN ELECTRODE | 12 | CASE |
| FT3000 | FORCETRIVERSE | 25 | CASE |
| FT3000DB | TRIVERSE | 25 | CASE |
| QI2301 | WOLF TO VL BIPOLAR CORD | 1 | BOX |
| QI2401 | BIPOLAR FORCEPS CORD | 1 | BOX |
| SEA3705 | TUBING 1/4" X 10 | 10 | CASE |

| SEA3710 | TUBING 3/8" X 10 | 10 | CASE |
|---|---|---|---|
| SEA3715 | TUBING WITH SPONGE GUARD, 7/8" X 10 | 12 | CASE |
| SEA3720 | TUBING 1/4" LAP SMOKE | 12 | CASE |
| SEA3725 | Laser Resistant Wand 7/8" x 8" | 5 | CASE |
| VTWT515 | 1 1/3" X 10' TUBING WITH SPONGE GRD | 5 | CASE |
| E0509NSB | CASED DISP BIPOLAR CORD-NSB | 50 | CASE |
| E0510NSB | CASED DISP MOLDED CORDSET-NSB | 50 | CASE |
| E1450GNSB | EDGE BLADE ELECTRODE 3" GEN NS | 100 | CASE |
| E1450XNSB | EDGE BLADE ELECTRODE 2.5" HEX | 100 | CASE |
| E14504NSB | EDGE BLADE ELECTRODE 4" NSB | 100 | CASE |
| E14506NSB | EDGE BLADE ELECTRODE 6.5" NSB | 100 | CASE |
| E1452NSB | EDGE NEEDLE ELECTRODE 2.8" NSB | 100 | CASE |
| E1455BNSB | EDGE INSULATED BLADE ELECTRODE | 50 | CASE |
| E1455NSB | EDGE INSULATED BLADE ELECTRODE | 50 | CASE |
| E14554NSB | EDGE INSULATED BLADE ELECTRODE | 50 | CASE |
| E14556NSB | EDGE INSULATED BLADE ELECTRODE | 50 | CASE |
| E1465BNSB | EDGE INSULATED NEEDLE ELECTROD | 50 | CASE |
| E1465NSB | EDGE INSULATED NEEDLE ELECTROD | 50 | CASE |
| E14654NSB | EDGE INSULATED NEEDLE ELECTROD | 50 | CASE |
| E1551XNSB | VALLEYLAB HEX BLADE ELECTRODE | 250 | CASE |
| E15516NSB | VALLEYLAB BLADE ELECTRODE 6.5" | 100 | CASE |
| E1552NSB | VALLEYLAB NEEDLE ELECTRODE 2.8 | 250 | CASE |
| E2250HNSB | FTSWITCH PENCIL EDGE BLADE ELE | 50 | CASE |
| E2350HDBNSB | EDGE ROCKER SWITCH PENCIL W/HO | 50 | CASE |
| E2350HGNSB | EDGE ROCKER SWITCH PENCIL W/HO | 1800 | CASE |
| E2350HNSB | EDGE ROCKER SWITCH PENCIL W/HO | 50 | CASE |
| E2350HSNSB | EDGE ROCKER PENCIL HOLSTER SMO | 50 | CASE |
| E2400NSB | CASED HOLSTER NSB | 100 | CASE |
| E2450HDBNSB | EDGE BTN PNCL W/ 15' CORD NSB | 50 | CASE |
| E2450HGNSB | EDGE CT PEN BUTTON HLSTRAIGHT | 1800 | CASE |
| E2450HNSB | DISP HNDSWITCH PENCIL W/H & CB | 50 | CASE |
| E2450HSNSB | EDGE PENCIL HOLSTER SMOKE ATTA | 50 | CASE |
| E2504NSB | VALLEYLAB FOOTSWITCHING PENCIL | 50 | CASE |
| E250510FRNSB | SUCTION COAGULATOR 6INCH 10 FR | 50 | CASE |
| E2515GNSB | ROCKER SWITCH PENCIL GNSB | 2400 | CASE |
| E2515HDANSB | ROCKER SWITCH PENCIL W/HOLSTER | 50 | CASE |
| E2515HDBNSB | ROCKER SWITCH PENCIL W/HOLSTER | 50 | CASE |
| E2515HGNSB | ROCKER SWITCH PENCIL W/HOLSTER | 1800 | CASE |
| E2515HNSB | ROCKER SWITCH PENCIL W/HOLSTER | 50 | CASE |
| E2515HSNSB | ROCKER PENCIL HOLSTER SMOKE AT | 50 | CASE |
| E2515NSB | ROCKER SWITCH PENCIL NSB | 50 | CASE |
| E2516GNSB | BUTTON SWITCH PENCIL GNSB | 2400 | CASE |
| E2516HGNSB | BUTTON SWITCH PENCIL HOLSTER G | 1800 | CASE |
| E2516HNSB | BUTTON SWITCH PENCIL HOLSTER N | 50 | CASE |
| E2516NSB | BUTTON SWITCH PENCIL NSB | 50 | CASE |
| E2750NSB | LAPAROSCOPIC HANDSET NON-STERI | 10 | CASE |
| E3305NSB | SUCTION COAGULATOR 10 FR-6INCH | 50 | CASE |
| E3310NSB | SUCTION COAGULATOR 10FR-6INCH | 50 | CASE |

| | | | |
|---|---|---|---|
| VL2600NSB | DISP BUTTON PENCIL W/HOL NSB | 50 | CASE |
| CVPLP2020 | VL SMOKE EVAC PENCIL H, S 20 | 20 | CASE |
| E2350HS | EDGE SMOKE ROCKER PENCIL | 25 | CASE |
| E2450HS | BUTTON PENCIL W/SMOKE EVAC,CB | 25 | CASE |
| E2515HS | PENCIL W/SMOKE EVACUATION | 25 | CASE |
| E2516HS | PENCIL W/SMOKE EVACUATION | 25 | CASE |
| SEA3705 | TUBING 1/4" X 10 | 10 | CASE |
| SEA3710 | TUBING 3/8" X 10 | 10 | CASE |
| SEA3715 | TUBING WITH SPONGE GUARD, 7/8" X 10 | 12 | CASE |
| SEA3720 | TUBING 1/4" LAP SMOKE | 12 | CASE |
| SEA3725 | Laser Resistant Wand 7/8" x 8" | 5 | CASE |
| SEA3700 | FILTER 3 PORT, RFID | 2 | CASE |
| RVFT10 | FLUID TRAP BUFFALO FILTER | 10 | CASE |

**EXHIBIT A-2**

**CAPITAL PURCHASE PROGRAM AGREEMENT ("Agreement")**

| Annual Payment Terms | Period Ending | Minimum Annual Related Disposable Purchase Value Requirement to earn maximum Discount* | Maximum Annual Discount* | Annual Cash Payment for Capital based on Purchase Price (based on earning 0% Discount) | Annual Cash Payment for Capital based on Purchase Price (based on earning 50% Discount) | Annual Cash Payment for Capital based on Purchase Price (based on earning 75% Discount) | Annual Cash Payment for Capital based on Purchase Price (based on earning 100% Discount) |
|---|---|---|---|---|---|---|---|
| Payment 1 Due | One Year From Effective Date | $1,005,000 | $201,160 | $201,160 | $100,580 | $50,290 | $ 0 |
| Payment 2 Due | Two Years From Effective Date | $1,005,000 | $201,160 | $201,160 | $100,580 | $50,290 | $ 0 |
| Payment 3 Due | Three Years From Effective Date | $1,005,000 | $201,160 | $201,160 | $100,580 | $50,290 | $ 0 |
| Total over Term | | $3,015,000 | $603,480 | $603,480 | $301,740 | $150,870 | $ 0 |

**\*Customer will earn a pro-rata amount of full discount based on the achievement level of Related Disposable purchases to the target level during the payment period.  Customer may pay for the Capital with any combination of Related Disposable purchases and/or direct cash payments for the Capital. For the avoidance of any doubt, Customer will receive the discount based on its purchases of Related Disposables during such twelve month period and Customer cannot reach a higher discount threshold by submitting direct cash payments to Seller. Direct cash payments may only be applied after the discount has been applied. Purchases of Related Disposables count towards the Minimum Annual Related Disposable Purchase Requirement for the twelve month period in which they were purchased and may not count toward a subsequent twelve month payment period.**

| Spend Target Achievement | Discount % Earned |
|---|---|
| **100% (or greater)** | **100%** |
| **90%-99%** | **75%** |
| **80%-89%** | **50%** |
| **0%-79%** | **0%** |

*This requirement shall not be interpreted to require Customer to purchase more than ninety percent (90%), on a total spend basis, of Customer's requirements for products of the kind set forth in Exhibit A-1. In the event that by satisfying this Minimum Disposable Requirement it is determined  that Customer  would be required to  purchase more than ninety  (90%) of such  requirements from Seller in  any contract year, Customer shall notify Seller and the parties shall meet within 60 days  of such determination and negotiate an appropriate new Minimum Disposable Requirement.  Subject to applicable law  and any confidentiality obligations,  upon Seller's request, Customer shall provide Seller with Customer's applicable  disposable product total spend over the previous twelve  months and such other reasonable information necessary to permit Seller to verify Customer's Seller utilization percentage.

*Annual periodic payments are due no later than 30 days from date of invoice.*

**Additional Provisions:**
Annual purchase value of Related Disposables shall be determined in the attached Payment Schedule (**Exhibit A-2)**, as applicable, and will be net of returns, rebates, additional discounts, taxes, shipping, and credits related thereto.

Except as otherwise authorized by Seller, the Product pricing and discounts offered herein may not be eligible for combination or inclusion with other pricing or incentive offers/programs related to the Product which may be available from time to time through a group purchasing organization, federal supply schedule, authorized distributor, or Seller.

Each Related Disposable purchase hereunder is eligible to be allocated towards and qualifies for a discount under only one discount program at time of order.

As part of the cost reporting process or otherwise, Purchaser may be obligated to accurately report and provide full information concerning such discounts pursuant to and in accordance with 42 U.S.C. §1320b-7b and or 42 C.F.R. §1001.952(h)(1), other federal or state laws and regulations promulgated thereunder; as well as, agreements with third party payers, relating to any applicable discounts or rebates.  The product(s) and price(s) listed on this Agreement may be subject to further reduction based upon potential periodic rebates, if any, that may offered from time to time and separately contracted with Seller.  Please consult your rebate agreement, if any, for additional rebate information related to the products hereunder. Credits, rebates, or debits represent adjustments to amounts paid

under this order and may affect the net price paid for the products and, if so, may need to be taken into account in providing product pricing information and cost reporting as described above.

Capitalized Terms not defined herein have their respective meanings set forth in the Agreement.

**Purchase and Payment Schedules to Master Purchase Agreement Agreed to by:**

**Medical University Hospital Authority**

By: _____
                  (Signature)

Printed: _____

Title: _____

Date:_____

**Covidien Sales LLC**

By: _____
                  (Signature)

Printed: _____

Title: _____

Date: _____

## EXHIBIT B:
## ADDITIONAL TERMS & CONDITIONS

1. **PRICING:** Customer will be invoiced at the applicable group purchasing organization (GPO) price for the Related Disposables in effect at the time the order is placed, or, in cases where GPO price is inapplicable, Customer's locally negotiated price. In the event no such agreements apply, then Seller's standard terms and conditions of sale shall apply. All terms and conditions applicable to the direct purchase of the Related Disposables at the GPO or locally negotiated price shall apply.

2. **PAYMENT TERMS:** Seller terms of sale are Net 30 days from date of invoice. Seller may change such terms of sale at any time upon 60 days' notice to Customer. If by the terms of sale, credit is extended to Customer, Seller reserves the right to revoke credit if Customer fails to pay for any goods previously delivered as due or if in the judgment of Seller there has been a material adverse change in Customer's financial condition and thereupon Seller shall have the right to demand payment or other assurance which it deems adequate before shipment of any further goods. Seller reserves the right to charge interest on delinquent accounts at the lesser of the rate of 18% per annum or the highest rate permitted by applicable law. Customer agrees to pay all costs of collection including reasonable attorney fees for unpaid amounts properly due to Seller. All sales, excise and similar taxes which Seller may be required to pay or collect with respect to the goods covered by this order shall be for the account of Customer except as otherwise required by law.

3. **DELIVERY**: Shipment methods are at Seller's discretion and all deliveries are F.O.B. Delivery.

4. **RISK OF LOSS/ PRODUCT CARE**: Risk of loss of Product transfer to Customer upon Delivery. Customer shall at all times be responsible for any loss or damage to the Product while in Customer's care, custody or control. Customer acknowledges and accepts sole and complete responsibility for the maintenance, cleaning and sterilization of the Capital before they are used in a surgical procedure.

5. **TITLE**: Title to the Capital will pass to Customer upon shipment. Until Customer has paid for the Capital in full: Customer may not sell, lease, or otherwise transfer the Capital or move it from Customer's address set forth in this Agreement without Seller's prior written consent; and Customer will take proper care of the Capital and make no alterations to it without Seller's prior written authorization. Seller hereby retains a purchase money security interest in the Capital and proceeds thereof, to secure payment for the Capital, any related taxes, and any costs to enforce this security interest. Seller may file at any time a copy of this Agreement with appropriate authorities as a financing statement in order to perfect Seller's security interest. In the event of failure to make a payment due for the Capital, the insolvency of Customer, the filing of a petition in bankruptcy by or against Customer, the appointment of a receiver for Customer, or an assignment for the benefit of creditors of Customer, Seller may terminate this Agreement, refuse to make further shipments hereunder, declare the entire outstanding balance owing on the Net Capital Purchase Price as set forth on the Purchase Schedule immediately due and payable, and exercise any or all other rights and remedies provided by law, including repossession of the Capital. Seller shall be entitled to recover reasonable attorney's fees and costs of enforcing its rights to payments hereunder, regardless of whether such enforcement includes enforcement against the security or any judicial proceeding. In any judicial action brought by either party to enforce any of such party's rights or remedies under this Agreement, the prevailing party shall be entitled to all reasonable attorneys' fees and all costs, expenses and disbursements in connection with such action.

6. **USE OF PRODUCT:** Customer shall comply with all laws, ordinances, and regulations, with respect to the maintenance, use, and operation of the Capital.

7. **TAXES IN THE U.S.**: The amount of any applicable sales, use, excise, or other municipal, state, or federal taxes will be billed and collected by Seller unless the customer provides an exemption certificate.

8. **LIMITATION OF LIABILITY; NO IMPLIED WARRANTY**: Under no circumstances shall Seller be liable for any incidental, consequential or special damages, losses or expenses (including but not limited to loss of profits, business opportunities, damage to goodwill) arising from this Agreement or its performance, or in connection with the use of, or inability to use, the Products hereunder. Customer's sole remedy shall be the repair or replacement by Seller, at Seller's sole discretion, of the Product or any components thereof, which are determined to be materially defective in material or workmanship during the standard warranty period of the Product. ***THERE ARE NO IMPLIED WARRANTIES AS TO MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.*** The standard warranty period for each product is defined in the product labeling and information booklet which accompanies each Product.

9. **TRADE CONTROLS:** Customer agrees to fully comply with all applicable export control and economic sanctions laws, and will not divert Products contrary to U.S. law. Customer warrants that it is not set forth on, nor owned or controlled by any person set forth on, a restricted party list maintained by the U.S. or other governments.

10. **PRODUCT TRANSFER AND USE:** During the term of this Agreement, Customer shall purchase all Products directly from Seller or authorized distributors. Customer agrees to purchase Products from Seller only for its own account and not to resell, exchange or otherwise transfer such Products to or with any third party. Seller shall be entitled to injunctive relief and all other equitable and legal remedies available to it in the event of a breach by Customer of this obligation. The foregoing obligation shall survive termination of this Agreement for any reason. By purchasing any product designated by Seller for "single use," "multiple use in a single procedure," "do not resterilize," or the like, Customer agrees to limit that Product's use in accordance with those express designations. The product labeling and information booklet which accompanies each Product clearly identifies Seller products that are subject to such use restrictions.

11. **REFERENCES:** Customer hereby consents and grants to Seller the right to use Customer's name as a reference for Seller in statements to outside parties, including, but not limited, to Group Purchasing Organizations, Independent Health Networks, and potential customers of Seller, in written or oral form, at Seller's sole discretion and without prior approval by Customer other than that provided for herein.

12. **SEVERABILITY:** In the event that any of the provisions of this Agreement shall be held by a court or other tribunal of competent jurisdiction to be illegal, invalid, or unenforceable, such provisions shall be limited or eliminated only to the minimum extent necessary to preserve the validity of this Agreement. This Agreement shall otherwise remain in full force and effect.

13. **MISCELLANEOUS:** This Agreement, including all Exhibits, constitutes the final entire agreement between the parties with respect to the subject matter hereof. This Agreement may only be amended or modified by an instrument in writing signed by an authorized representative of each party hereto. No modified, additional or different terms or conditions proposed by Customer, verbally or in writing, including, but not limited to, any terms appended to Customer's purchase order, will be accepted by Seller and are expressly rejected by Seller. Any other purported commitment, in writing or otherwise, by or between the parties to this Agreement shall not be effective unless such commitment is described in a written instrument signed by authorized representatives of Customer and Seller. Any attempted assignment of this Agreement, or any rights or obligations hereunder, by Customer without the written consent of Seller shall be void. No waiver or discharge of any breach of this Agreement shall be effective unless it is in writing signed by both parties. Any waiver of any breach of any provision of this Agreement shall not be a waiver of any subsequent breach of the same or

of any other provision of this Agreement.  This Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut, without regard to the conflicts of law provisions thereof.   All notices, demands, requests, or other communications which may be or are required to be given, served, or sent by either party to the other party pursuant to this Agreement shall be in writing and shall be delivered personally, or mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or overnight courier to the address for such party set forth above.  Each party represents that (i) such party has the full right, power and authority to enter into this Agreement and be bound by its terms, and to perform its duties hereunder, and (ii) that such party's execution and delivery of this Agreement, and the consummation of the transactions described in this Agreement, do not violate or conflict with any agreement or obligations of such party to any other person or entity.